# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

DENISE JOSHUA,

    Plaintiff,

*v.*　　　　　　　　　　　　　　　　CASE NO. 08-CV-14012

COMMISSIONER OF　　　　　　　　DISTRICT JUDGE VICTORIA A. ROBERTS
SOCIAL SECURITY,　　　　　　　　MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.  RECOMMENDATION

In light of the entire record in this case, **IT IS RECOMMENDED** that Plaintiff's motion be granted, Defendant's motion be denied, and the case be **REMANDED** to the Commissioner for further proceedings under Sentence Four of 42 U.S.C. § 405(g).

## I.  REPORT

### A.  Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

benefits (DIB), and supplemental security income (SSI) benefits. This matter is currently before the Court on cross-motions for summary judgment. (Doc. 8, 9.) Plaintiff also responded to Defendant's motion. (Doc. 10.)

Plaintiff was 47 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 14.) Plaintiff's relevant employment history includes work as a injection molding operator and painter. (Tr. at 57.) Plaintiff last worked in February of 2005. (*Id.*)

Plaintiff filed the instant claims (DIB and SSI) on August 15, 2005, alleging that she became unable to work on February 14, 2005. (Tr. at 46, 180.) The claims were denied at the initial administrative stages. (Tr. at 36, 188.) In denying Plaintiff's claims, the Defendant Commissioner considered COPD (Chronic Obstructive Pulmonary Disease) and other respiratory disorders as possible bases of disability. (*Id.*)

On January 24, 2008, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Melvyn B. Kalt, who considered the instant application for benefits *de novo*. In a decision dated February 22, 2008, the ALJ found that Plaintiff was not disabled because she could perform a limited range of sedentary work. (Tr. at 11-18.) Plaintiff requested a review of this decision on March 11, 2008. (Tr. at 9.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on July 23, 2008, when, after the review of an additional exhibit[2] (Tr. at 189-90), the Appeals Council denied Plaintiff's request for review. (Tr.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

at 5-7.) On September 17, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse*

*v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Heston,* 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work . . . ." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the

6

national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. Administrative Record

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was treated from 2005-2007 by Samuel A. Allen, D.O.. at Pulmonary & Critical Care. Dr. Allen observed the presence of suspected interstitial lung disease, collagen vascular disease, and morbid obesity. (Tr. at 98, 124-26, 129-31, 135, 141-45, 155-58, 160-61, 177-78.) Dr. Allen conducted spirometry, lung volume, diffusion and airway resistance testing as discussed more fully below and prescribed Advair and albuterol inhalers as well as prednisone. (E.g., Tr. 98, 100, 103.) In May of 2005, Dr. Allen found that Plaintiff was able to walk approximately five (5) minutes and "maintained [oxygen] saturation above 91% with a max of 98%, mean of 94% and a minimum of 91%." (Tr. at 97.)

Throughout 2007, Plaintiff was also treated by other doctors at Pulmonary & Critical Care. Andrew M. Staricco, M.D., F.C.C.P., and Steven Remus, PA-C, also treated Plaintiff for sarcodisis, exertional dyspnea secondary to morbid obesity and deconditioning, and mild obstructive sleep apnea. (Tr. at 119, 123, 127-28.) Dr. Allen also referred Plaintiff to Kristijan G. Minanov, M.D., F.A.C.S., of the Cardiac Surgery Associates, for a left VATS biopsy for possible interstitial lung disease and a nondiagnostic bronchoscopy. (Tr. at 104-07.)

In September of 2005, a CT scan of Plaintiff's thorax revealed "[n]o significant change in the chronic pulmonary fibrotic changes especially involving both lungs since 5/10/2005 [and] [n]o active infiltrates or interstitial lung disease changes are present at this time." (Tr. at 162.)

On December 7, 2005, Plaintiff was also examined at the request of Disability Determination Service by L. Banerji, M.D., who concluded that Plaintiff has pulmonary sarcodosis with "no complications" and that ""[p]atient is not short of breath on normal physical exertion" and osteoarthritis of the knee with "no functional limitation orthopedically from it at this time." (Tr. at 110.)  Plaintiff is 60 inches tall and weighed 286 pounds thus Dr. Banerji noted "[m]arked exogenous obesity" but with "no limitation of mobility or activity from it." (Tr. at 110-11.)

Plaintiff underwent a polysomnography in March of 2006 which revealed "[m]ild to moderate Obstructive Sleep Apnea." (Tr. at 146-54.)  Plaintiff underwent an echocardiogram for possible pulmonary hypertension on October 26, 2006. (Tr. at 138-40.)  The results of the echocardiogram revealed "[c]hamber dimensions normal," "[m]ild concentric left ventricular hypertrophy," "[s]mall pericardial effusion," "[c]olor-flow Doppler suggests trace mitral insufficiency and trace tricuspid insufficiency with right ventricular systolic blood pressure estimated at 64 mmHG." (Tr. at 138.)

A Physical RFC Assessment concluded that Plaintiff can occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, and is unlimited in her ability to push and/or pull, and that she is occasionally limited in climbing but had no other postural, manipulative, visual, or communicative limitations. (Tr. at 88-91.)  The assessment also noted that Plaintiff should avoid even moderate exposure to fumes, odors, dusts, and gases and should avoid concentrated exposure to hazards. (Tr. at 91.)

Plaintiff testified at the administrative hearing that her biggest problem is her breathing and that she tires very easily when she walks around. (Tr. at 197.)  Plaintiff also stated that she uses oxygen around three to four hours each day. (Tr. at 198.)  When asked how long she could be on her feet, Plaintiff answered, "No more than an hour or not even that long actually [] [a]bout fifteen

minutes I'd have to go and sit down." (Tr. at 199.) Despite these difficulties, Plaintiff testified she is able to do her dishes, clean the kitchen, and drive. (Tr. at 201-02.)

The ALJ asked the vocational expert ("VE") to consider a hypothetical person with limitations to sedentary work, in a clean environment, where she could occasionally use inhalers or oxygen. (Tr. at 205.) The VE responded that such a person could perform sedentary occupations such as information clerk, security monitor, receptionist, telephone operator and that there are 8,000 such jobs in the metropoiltan area, and 15,000 in the state. (Tr. at 205.)

### E.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since February 14, 2005. (Tr. at 17.) At step two, the ALJ found that Plaintiff's severe pulmonary sarcoidosis and interstitial lung disease complicated by morbid obesity "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff lacked the residual functional capacity to perform her past relevant work as a machine operator, painter, or hi-lo driver. (*Id.*) At step five, the ALJ found that Plaintiff possesses the residual functional capacity to perform a limited rnage of sedentary work and that she is a younger individual. (*Id.*)

### F.   Arguments of the Parties

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800

F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff argues specifically that the ALJ failed to properly evaluate medical evidence that demonstrated that she met or equaled the requirements of Listings 3.02(A), 3.02(B) and 3.02(C)(1) of the Listings of Impairments. (Doc. 8 at 13.)  Specifically, Plaintiff points out that as to Listing 3.02(A), a forced expiratory volume (FEV) equal to or less than 1.05L meets the listing and equates to disability for Plaintiff's height of sixty (60) inches.  (Doc. 8 at 13.)  Plaintiff further notes that on April 11, 2005, Plaintiff's FEV1 results were .63L before bronchodilator and .62 post-bronchodilator, and that Plaintiff was found to have given a good effort during the testing. (*Id.*; Tr. at 100-01.)  Plaintiff asserts that the ALJ "failed to acknowledge these test results, let alone consider them or explain why he ultimately rejected them." (*Id.*)  Defendant counters that although the April test results were sufficiently low to meet Listing 3.02A, "the highest FEV1 readings obtained in February 2005, two months earlier, and the highest FEV1 readings obtained in December 2005, eight months later, in November 2006 and in October 2007 were above the 1.05 level required by Listing 3.02A (Tr. 100, 103, 114, 121, 132, 171, 174)." (Doc. 9 at 13.)  Defendant further argues that since readings two months before and eight months after the April 2005 reading were higher than 1.05, the condition did not persist for twelve months and thus, Plaintiff is not entitled to a finding of disability under Listing 3.02A.  (*Id.*)

As to Listing 3.02B, Plaintiff argues that for a person of plaintiff's height, a forced vital capacity (FVC) of 1.25L or less would qualify her as disabled. (Doc. 8 at 13.)  Plaintiff offers results of 1.31L before bronchodilator and 1.18L post-bronchodilator taken on April 11, 2005 and concludes Plaintiff also met Listing 3.02B. (*Id.* at 14.)  Plaintiff further contends the ALJ again failed to acknowledge or explain why these results were rejected. (*Id.*)  Defendant counters that

10

the "regulations also state that the highest reading should be applied when determining whether a claimant satisfies the criteria for Table II. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.00E." Doc. 9 at 13.) Defendant further contends that although Plaintiff suggests the April 11, 2005 results satisfy the Listing, the results do not since the highest reading of 1.31L was above the 1.25L level required by Table II of Listing 3.02B. (*Id.* at 14.) "Moreover, the highest FVC readings obtained in February 2005, two months earlier, and the highest FVC readings obtained in December 2005, eight months later, in November 2006 and in October 2007 were above the 1.25 level required by Listing 3.02B (Tr. 100, 103, 114, 121, 132, 171, 174)." (*Id.*)

As to Listing 3.02C, Plaintiff notes that a claimant meets this Listing if she has a diffusing capacity of the lungs for carbon monoxide (DLCO) less than 10.5ml/min/mm HG or less than 40% of the predicted normal value. (Doc. 8 at 14.) Plaintiff offers test results of 7.55 and 7.67ml/min/mm HG (39% of the predicted normal value) from April 11, 2005 as proof that Plaintiff satisfied this Listing. (*Id.*; Tr. at 100.) Plaintiff again argues that the ALJ failed to acknowledge or explain his reasons for rejecting this evidence. (*Id.*) Defendant counters that the test results were deficient and could be rejected because the source of the predicted values was not reported (nor were the results submitted in the form of a table or nomogram) nor was there evidence that the DLCO value used was the mean of at least two acceptable measurements, with two acceptable tests within 10 % of each other or 3 ml CO(STPD)/min/mm HG as required by Listing 3.02C(1) and 300F(1). (Doc. 9 at 14-15.) Defendant further contends that tests performed in November of 2006 showed a DLCO value well above the minimum for Listing 3.02C and that this evidence suggests Plaintiff did not meet the Listing in April of 2005. (*Id.* at 16.)

Plaintiff cites *Johnson v. Barnhart*, 66 Fed. App'x 285 (3rd Cir. 2003), as support for his argument that the ALJ failed to properly consider and give reasons for rejection of all these test

11

results. (Doc. 8 at 15-16.) Defendant argues that a "heightened articulation standard at step three of the sequential analysis is not required." (Doc. 9 at 16, citing *Bledsdoe v. Barnhart*, 165 Fed. App'x 408, 411 (6th Cir. 2006).)

### G. Analysis and Conclusions

Under Listing 3.02, the "highest values of the FEV1 and FVC, whether from the same or different tracings, should be used to assess the severity of the respiratory impairment." 20 C.F.R. § 404, Subpt. P, App. 1 § 3.00(E). "In the usual case, it is the post-bronchodilator values which are used." *Uhlig v. Apfel*, No. 97 Civ 7629SHS, 1999 WL 350862, at *7, n.3 (S.D.N.Y. June 2, 1999).

In addition, the "combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, ...adjudicators must consider any additional and cumulative effects of obesity." 20 C.F.R. § 404, Subpt. P, App. 1 § 3.00(H)(1).

The ALJ is required to "review all evidence of impairments to see if the sum of impairments is medically equivalent to a 'listed impairment'" but the ALJ is not required to "articulate, at length, the analysis of the medical equivalency issue." *Bledsdoe,* 165 Fed App'x at 411. "On the other hand, the ALJ's findings should be as comprehensible and analytical as feasible, and should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the ALJ's decision." *Holland v. Massanari*, 152 F. Supp. 2d 929, 934 (W.D. Tenn. 2001), *citing Cotter v. Harris*, 642 F.2d 700, 705 (3rd Cir. 1981). An ALJ's "bare recital of boilerplate language" along with a "failure to explain his implicit rejection of [] evidence or even to acknowledge its presence [is] error." *Cotter*,

642 F.2d at 707. Therefore, a "mere conclusory statement that a claimant's impairment does not meet or equal one of the listed impairments is insufficient because it is 'beyond meaningful judicial review.'" *Williams v. Comm'r of Social Security*, 156 Fed. App'x 501, 504 (3rd Cir. 2005)(citation omitted). "Moreover, when confronted with contradictory evidence, the ALJ must explain his reasons for accepting certain evidence and rejecting or discounting other evidence." *Id.*

In *Johnson v. Barnhart*, 66 Fed. App'x 285 (3rd Cir. 2003), the plaintiff suffered from COPD. Under Listing 3.02A, one of her FEV1 tests, taken after her application was filed and before the hearing, met the Listing requirement while two prior test results were above the Listing level. Under Listing 3.02C(1), both DLCO figures met the Listing requirement. The ALJ and district court, however, found she was not disabled. The Third Circuit reversed and remanded, declining to determine whether or not the plaintiff met the Listing requirements, but concluding that the "ALJ should not have simply ignored the DLCO test results or summarily dismissed supporting [FEV1] test results as 'inconsistent.'" *Id.* at 288. The Third Circuit further opined that "[i]n line with his duty to explain why he credited certain medical evidence but not other medical evidence, an ALJ must explain a decision to credit some test results while not crediting others." *Id.* at 289. Finally, the Court instructed that "the ALJ should not have considered whether [plaintiff's] activities of daily living were consistent with a finding that her condition met or equaled either of the Listings [because]...an ALJ should not look beyond the medical evidence of signs, symptoms and laboratory findings." *Id.*

Similarly, in the instant case, Plaintiff proffers one set of test results per each relevant Listing cited that supports her contention that she met the Listing requirements, while other test results exceeded the Listing. The ALJ's entire analysis of the evidence presented runs to less than three typewritten pages. Nowhere did the ALJ cite, mention or discuss these nor any other test

13

results at all, nor did he indicate why he rejected the ones that met a Listing but accepted the ones that did not meet the Listing.[3] Although the Commissioner proffers reasonable arguments and potential explanations for why the ALJ may have done so,[4] the ALJ neither never articulated any basis for his acceptance or rejection of evidence. Indeed, the ALJ never even articulated what evidence he did accept. His analysis of the evidence is little more than a litany of conclusions. I therefore suggest that the Appeals Counsel's refusal to review the ALJ's findings effectively deprived this court of the ability to meaningfully review the ALJ's decision. meaningfully when it is given a conclusory statement that plaintiff did not meet the Listing without any foundational factual explanation. *Burnett v. Comm'r of Social Security*, 220 F.3d 112, 119 (3rd Cir. 2000)(remanding where ALJ made a cursory determination at step three and failed to explain or acknowledge medical evidence that supported the plaintiff's position). Although "elaborate articulation of the ALJ's thought process" is not required,[5] some articulation of the rationale for the conclusion and its evidentiary foundation is required.

I further suggest that "[b]ecause the ALJ did not assess Plaintiff's morbid obesity at Steps 2, 3, and 4 of the sequential evaluation, his decision failed to comply with a mandatory procedural requirement set forth in the Commissioner's Regulations." *Lowry v. Astrue*, No. 3:07CV0311,

---

[3]Although Defendant argues that the regulations required the ALJ to reject the test results that support her contention she meets a Listing because there were other test results that were higher, I suggest that the "highest reading" language applies to the relation between readings taken before or after the bronchodilator and does not eliminate the ALJ's duty to explain his conclusions. *Uhlig,* at *7.

[4]For example, Defendant argues that the ALJ properly rejected the results under Listing 3.02C because the test results were deficient for failure to report the source of the predicted values and failure to produce evidence that the DLCO value used was the mean of at least two acceptable measurements. (Doc. 9 at 14-15.) However, since the ALJ did not address the validity of the test scores, neither will this Report. The Commissioner remains free to challenge the validity of the test scores upon remand. *Johnson*, 66 Fed. App'x at 289, n. 1.

[5]*Gooch v. Sec'y of HHS*, 833 F.2d 589, 592 (6th Cir. 1987).

2008 WL 4372658, at*6 (S.D. Ohio Sept. 19, 2008), *citing* Listing 1.00Q, 20 C.F.R. Part 404, Subpart P, App. 1 and Social Security Ruling 02-01p, 2000 WL 628049.

Since remand is appropriate where the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments or failed to make a credibility finding, I suggest that remand is appropriate under Sentence Four of 42 U.S.C. § 405(g). *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

### III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

   s/ *Charles E. Binder*
   CHARLES E. BINDER
Dated: April 2, 2009   United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served upon counsel of record via the Court's ECF System and served on District Judge Roberts in the traditional manner.


Date:  April 2, 2009           By      s/Patricia T. Morris
                                    Law Clerk to Magistrate Judge Binder